Next case, case number 090473, Maria Chialella v. JMS Trucking Company. Counselor, could you please approach the bench, let us know who you represent, and tell us your names, please. Good morning, Your Honors. My name is Esther Schwartz. I'm from Stavano and Schwartz. I represent the Intervening Petitioner's Appellants, Occidental Fire and Casualty Company, Parco Insurance Services, and IAT Reinsurance Company. Good morning. Good morning, Your Honor. My name is Kevin Buebler. I represent the estate of Maria Chialella on behalf of the estate of Francesco. Okay. Fifteen minutes for each side, and then we are prepared to begin on this side. May I ask if I visit fifteen minutes with or without rebuttal? Well, you can reserve some for rebuttal. I'd like to reserve two minutes for rebuttal. Okay, that's fine. May it please the Court, again, my name is Esther Schwartz. I represent the insurance companies who I'll collectively refer to as Occidental. Generally, in beginning an oral argument, we usually hear from the bench about how you've read everything and all the briefs and the cases, and we shouldn't rehash it. So I'm not going to rehash it this morning. I'm going to try to simplify this for everybody. Because in preparing for the argument today, I drew myself a little chart, and I said, imagine a room where on one side we have a feuding plaintiff, and on one side we have the feuding insurance company.  And in the middle we have a fence. And the fence divides the two sides. And the judge from the trial court was on the fence. And the question was, which side did she pull over to? On the side of the plaintiffs, we have 12303. We have the Illinois Code of Civil Procedure. We have a statute that was promulgated by the legislature to deal with the technical rules involving litigants. We have the judgment creditor, and we have the judgment debtor. There's no mention of an insurance company whatsoever. And we have cases on 12303. And when you read the briefs, again, when you're preparing to issue your ruling, I would tell you, remember that line and put all the cases dealing with 12303 on the one side and all the cases dealing with supplemental payments provisions on the other side. Because when you read them, you'll understand how come the cases have gone down the way they did. And whenever there's a pull, and I think there was a pull with the trial court, is when you try to reconcile the two. Because I don't believe that you can, and I don't believe that you should. So when you read Pinkstaff, Thomas, Yassen, Schuster, Ford, and Niemeyer, and three of those decisions are first district, you're dealing with 12303 concepts. And now let's look at the other side of the fence. We've got the insurance policy. And that's between the insurance company and the insured. The plaintiff isn't part of that policy. The plaintiff is not a party to the contract. There is an assignment of some sort, and we have an excess liability case that's pending. And we did try to do this type of motion in that case, but the court had said that wasn't the proper place. So right now, the plaintiff is not the insured, and my rights are extended to what do I owe my insured under the contract and indirectly to the plaintiff in the shoes of the insured. But his rights are no greater than what the rights are of the insured vis-a-vis the insurer. So let's see which cases are on the other side of the fence. Well, we've got River Valley, about 50 years old, a very old case from the Supreme Court. And then we've got Meadey, which is a first district decision, which I say is an excellent decision and one I would ask you to read over and over, because that's the decision I think that will tell you how to resolve this case. And then we have Casciola, which again is a first district decision. And then we have Halloran, which is fifth district. And I think the problem with the fifth district, as you'll see when you read the case, is that they acknowledge there's a difference between the two. They say the 12303 is a different concept than the supplemental payments provision, but in the decision they start that pull of pulling each side to the other side, when it's much easier just to look at it as a supplemental payments provision. And had they stayed the course, it's a very easy decision to decide how it came down. So when we look at the 12303 cases, we really have to look at the language of the Code of Procedure. And I would tell the Court to remember that Pinkstaff, which is a very old case from 1964, was the first decision in Illinois that discussed the proviso that was put in 12303, which was never there before. That proviso was put in 1955. And that proviso dealt with how do you stop the interest under the Code of Procedure. Prior to that proviso, the cases used to say that the plaintiff was not entitled to interest while he appealed. And so most of the 12303 cases are cases where the judgments can be paid. It's the plaintiff who doesn't want it. He takes an appeal. And during the three and a half years that he appeals, what happens to the interest? Prior to this proviso, the plaintiff or whoever took the appeal, they forfeited the interest. When the proviso came down, it came up with a solution to make it equitable to level the playing field. It said that if the plaintiff wants to take the appeal, the plaintiff may continue to earn interest. And if the defendant wants to stop it, the debtor wants to stop it, the debtor has to make a choice of how to stop it by looking at the statute and complying with its terms. So when you read the proviso, the judgment debtor may tender, and remember the word is tender, a payment of judgment, costs, and interest. So in the proviso, it's very clear that there has to be a tender, there has to be a payment of judgment, costs, and interest. And the problem that's come up over the years is the pull of putting those terms over the fence when they're not in the insurance policy. And what does the word judgment mean? Here, if the judgment were to include the costs, they wouldn't have used the word costs. So you have three separate and distinct debts that are owed, and we don't disagree with the case law where it says when you make a legal tender, I personally think nobody knows what the word legal tender means, but there is an established meaning from very old cases prior to the statute that said everything that's due to make the plaintiff whole. So when you look at the public policy behind 1203, you have a question. Defendant, if you want to stop your interest during the appeal, you've got to do this correct to the letter of the law. And that's the problem that comes up in 12303 cases. The court thought it was a simple process. Those are the words. 1203 uses the word judgment. Costs and interest. Costs and interest. Correct. So under 12303, if we were tendering the judgment to stop interest during the appeal, we would have to do all these technical things correctly. That's what all the cases talk about, the physical presentment. So what are you saying, that you did not make this all the way up? We did not do anything under 12303. We never could have because we had an $8.3 million judgment. We could never pay under 12303 for the debtor couldn't pay it. And if you look at your cases in Pinkstaff through Nehemiah, you're generally dealing with the railroads and people that haven't enough money. Or in the case of Yassin, which was a garnishment, Zurich had enough limits. They just didn't pay it correctly. So the 12303 is when you have the money, you're making them whole, and you better do it right. And I'm not giving you any excuses for that. If you don't pay the cost right, if you don't pay the interest right, if you don't – So you're proceeding under the language of the insurance – We're proceeding on the other side of the fence. Which says all interest on the full amount of any judgment that accrues after entry of the judgment in any suit against the insured we defend, but our duty to pay interest ends when we have paid, offered to pay, or deposited in court the part of the judgment that is within our limit of interest. Correct. And I'm saying that we have a freedom to contract. We have to make sure that our language is clear. We have to make sure that the insured is getting what he bargained for. And that's exactly what we did in this case. So we have to go back to the case of River Valley and Median Cashiola and see why were there different sets of facts in those cases. It's a real simple answer. The provision said different things. If you go back to River Valley, please read the supplemental payments provision. In that provision it says that you must tender the word costs and interest. They said it in the policy. So in that case when it was tendered without interest, and by the way River Valley did have costs tendered so it was a non-issue, but what I'm saying is in the reading of that language it said, the insurance company says I will pay costs and interest, and if they didn't do it right they didn't get it right. Then that decision, River Valley really had to do with the word how much of the interest, is it some or all, because if you recall that was the case where the insurance company only tendered the money on the judgment, the interest, but not on the whole. And the court said there's an ambiguity here and there's a split decision, so River Valley comes down for the first time in Illinois and says it means all. You must tender it on the entire amount. So what happens in Median Cashiola? Well, ISO gets a hold possibly of the River Valley decision and they change the policy language. So when you read Median Cashiola, please reread the language, because those people took out the word costs, left the word interest, and used the word entire or all. So they wanted to clarify what the problem was in the old language. So now we get to Halloran, and Halloran goes one step further and changes it again. And Halloran puts in what we've put in, which is we want some kind of qualifying language where we've put the insured on notice of when our obligation stops. So unlike River Valley, which did not have this provision, we say that our duty to pay interest ends when we have paid, offered to pay, or deposited in the court. That language isn't in any of the other decisions until we get to Halloran. So why am I telling you not to follow Halloran? It's really simple, because 12303, first of all, they kept reading more into it, but it's a very simple reason. Their policy said it has to offer to pay. It didn't say deposit with the court. And our language says offer to pay or deposit with the court. So what did the insurance company Union Auto do in Halloran? It put the money in escrow. It put the money and it held it. And then when the plaintiff tried to get it out, the court said you didn't pay anybody. You just put it aside. They didn't have the depositing language. So I want you to pay attention to the language in the facts so you can see our case is so simple. We offered to pay the judgment that was within our limits. We offered to pay the interest. That is what we promised the insured under this provision we would do. That was what the reasonable expectation of our insured was. Nothing more, nothing less. Now, please also review the entire supplemental payments provision, Your Honors, because I believe that if you take a look at page 3 of our policy and we have cited the entire policy in our brief and we attached it, I think we can kind of dispel the cost problem much easier than struggling to fit the word cost into this case. If you look at paragraph 5, there's basically six supplemental payments that the insurance company owes. And hardly anybody knows about these things until you meet it. There's about bonding when you're in traffic court. There's about putting up an appeal bond. There's even a 200- So you're talking about the language that says all costs taxed against the insured in any state against the insured we defend which precedes us. Right. So we've said we will pay the costs. So when counsel says, well, we might have more later, we might have an appeal later, we're not saying to our insured we're not going to pay the costs. What we're saying to our insured with respect to our interest, when we pay the piece of the liability limit that's within, with the interest, we have stopped it. And so the judge actually on the fence, let's see what she- I mean, that's what you're saying now, but where does the policy say that? It says in paragraph 6, all interest, this is what- Yeah, I understand what- Oh, you want to know when we did this? It was our letter June 15th. Yeah, yeah, I got that. Mr. Feierweiser wrote, this will confirm, and I mean, I don't really care about following up on conversations. I understand. He says really clearly the insurance company has offered to pay the full insurance policy limits of $1 million, plus accrued interest to date with respect to the judgment order, and is willing to pay the amount on plaintiff's request. Right. And where is paragraph 5 included in there? It's not. Right. Because I'm saying to you paragraph 5 is not a qualifier of stopping interest. It's by itself. We will pay costs. We have a right to pay costs. We will be happy to pay costs when you tell us what they are. But costs aren't part of 6 to stop the interest, because if you look at 6 it says our duty to pay interest ends when we have paid, offered to pay, or deposit in court that part of the judgment that is within our limit. There is no mention of costs. So the only thing we lost in front of the judge, because she actually didn't go 12303 at all, because she said it didn't have to be a physical presentment. She didn't say we had to calculate the interest to a date certain. She didn't say we had to decide the rate. We didn't have to physically present anything. She read the word costs into the word judgment, because she said under 1508 costs are in every judgment. And I'm suggesting to the court, no, they're not, because they weren't in this case. Costs were not assessed yet. There was no order that said with costs. Number two, the costs hadn't been taxed. But more importantly, read 1508, because it specifically says that the plaintiff has the right to recover. It doesn't mean it's in the judgment. Read 5109, my favorite provision that no judge will ever give me. Are you aware that the defendant gets costs too? And yet I go into court and I say I want a summary judgment. Here's my judgment order. And the judge says to me, I never gave you costs. Under plaintiff's argument, costs are mandatory. They're in the judgment. So what I'm saying to your Honor is when you read 21303, if we want to look at that at all for help, we want to look at the word legal tender, why would they specify tender judgment, costs, and interest, unless they thought of them as three distinct things? Can you help me for a second? Your analysis is you don't even want us to talk about 21303. You want us to just look at policy. Correct. Why should we disregard the statute? Okay. And counsel has said to you, it's a lip service. He said it's unconstitutional. It's against public policy. It's too restrictive. And I'm asking you why. Why can't an insurance company restrict provisions of the statute? And it's contrary as long as it's free and clear. Remember what the Supreme Court said. As long as it's not against the public welfare, as long as it doesn't violate our statutes and constitution that are unfair, why shouldn't we do this? Because you were contracted with your insurer. Right. And not with them. Correct. So why should they be bound by the contract that you had with your insurer? They're saying, wait a minute, we weren't a part of that contract. Because. We're a third-party beneficiary. That's fine. Right. We're the third-party beneficiary, but we didn't have any input. They don't have any input. Because. They don't have any input because they're not party to the contract and they're the judgment debtor, judgment creditor. So why should that contract control their rights? It does control until you tell me that you throw the contract away. No, wait. I guess we're going to go back to the beginning. Okay. Explain to me why the Illinois statute does not apply. The Illinois statute doesn't. Well, hold the phone. Okay. The Illinois statute doesn't apply in its face because the statute, when you read it and the history of it. Let's go back. Does the Illinois statute apply here? It applies if I had $8.8 million and I was trying to tender it. Right. But you don't. I don't have either million dollars. I could never make the plaintiff whole. I could never, ever. Something in that statute talks about you making the plaintiff whole. Sure it does. All the cases on 213, every case that's discussed, 213.03, has been so technical about doing it correctly because you have to make the plaintiff whole. If the judge takes the appeal, you have stopped the interest. The judgment debtor stops the interest, not the insurance company. And so when you can't satisfy the judgment ever, you're never going to pay the judgment cost and interest. So 213.03 doesn't apply. It says if you are the judgment or you're going to be tendering your policy and you're not going to make the plaintiff whole, this statute does not apply to you. That's not what you're saying. Every case. Hold on. You want me to write something? Sure, absolutely. I want to get it straight. Okay. Sounds like what you want us to write is if you are going to throw your policy in the pile, but if you're not going to make the plaintiff whole, this statute does not apply to you. Is that what you're saying? Yes, because I'm not making the plaintiff whole. I can't make the plaintiff whole. Every case that we've cited, every time that you look at the cases under 213.03, they talk about how a debtor can satisfy completely the judgment. It's within their power. They can choose to do it. You're pulling that from the inferences. Oh, gee, 213.03 does not apply. It doesn't apply because there are two different sets. One is a judgment debtor, ma'am. I'm trying to be respectful. One is a judgment debtor and one is an insurance carrier. And in some cases the judgment debtor might be the insurance company, but they're not. The judgment debtor, if he wants to let the plaintiff take an appeal, can use the money. If he uses the money, he pays the interest during the appeal. If he doesn't use the money, he better get it over to the plaintiff correctly. That's not the same as the insurance policy. I understand. So you want us to write that under these circumstances, because the plaintiff cannot be made whole under policy, that 213.03 does not apply as the standard, that the standard for how these transactions should be assessed is the statutory provisions. Absolutely, because the provisions between me and my insurer, and you have to look at the language, all it says is I have to offer to pay. I can't make him whole because I can't pay him $8.3 million unless he vacates from the previous appeal and we have nothing to talk about. But as long as I have, and this is what insurance carriers do, if there's an excess policy, so they want to get out soon, if you read River Valley, read about it, it's a speedy retreat. The insurance companies have to speedily retreat, but they've got to do it correctly. And I would also suggest to the court that when you take a look at Haloran and all these decisions, they talk about tenders and payments. Ours is much easier. It's an offer to pay. So I'm not asking you to excuse anything. One other thing, if I could just digress. When you read Median Cashiola, that was a case where every one of those decisions did make a distinction between 213.03. And the supplemental payments provision. This court has said it three times. It's totally two different things. So in 1303, it's one thing for the debtor and under the insurance provision. In Median Cashiola, I think the first district really wanted to give the insurance company the win because they picked up the phone the next day and they said, let's boys be boys and I'll give you the money, I'll give you the interest, let's do it. And the plaintiff said, pal, Sam, I got an excess verdict. I'm not taking the money. So he writes them a letter the next day and the court said that was fine. What's interesting is under that older language, their policy said it had to be tendered, deposited, or paid. So in those two cases, the first district went into this excuse doctrine and said since the plaintiff told you to pound Sam, he didn't have to pay it. I'm not even asking you to go there because my language doesn't even say it. It says I have to offer to pay. This is clearly an offer. May I ask a question? Sure. Counsel, just so that I'm clear. Okay. You're saying if the insurance company can satisfy the judgment, pay the cost, and interest, 213.03 applies, correct? Generally, or not the insurance company, yes. But it can be any defense, any debtor. Wait. It applies. Sure. If you cannot satisfy the judgment, pay the cost, and interest, then 213.03 does not apply. It can't be done. It can't be done. Because it can't be done, the statute does not apply. Right. Okay. I'm clear. Okay. Can I just – I just want to talk a little bit about public policy. Take a look at the time limitation provisions that we have in the insurance policy versus the case law. I cited two of them in my case. We have a statute of limitations that's ten years for defiling a breach of contract action. We have an insurance policy that puts it down to one year. Same argument. You can't do it because it's one year here, it was ten. The court said no. What public policy did you violate? You can restrict the term. Now let's look at the U.N. cases. And I didn't cite these and I apologize, but if you look at the Buccalow or the Coyne decision, those were cases where the insurance carrier put one year to file a U.N. case as opposed to two. Now that rubbed up against the insurance code, not the statute of limitations. And the court said since you want to put them in the same position, you've given somebody hurt by an insured motorist a greater statute than the uninsured. That was against public policy. They struck it down and said it had to be two years. So when you look at how counsel wants you to say he wants you to trump the policy, he wants you to annihilate it, he wants you to say we can't use it because it's against public policy. It's not. One day the insurance code might tell us how to tender our interest. But I would ask the court, win or lose, give me a clear direction because if I don't win this case, I don't know how to pay this tomorrow. I truly don't. So we want a clear direction. How do we pay it? I'm not asking for excuses. What do we do? What was the insured expecting? He didn't expect me to say this was the interest, this was the amount. He didn't expect that. He wants me to pay my whole interest as promised and my judgment, the limits. And under 5, I pay the cost. And one day counsel will give us the cost, we'll pay them. Because we owe it to the insured. That has nothing to do with stopping our interest. So I would ask the court to please reverse, mandate it back to the court, and so we can save about $2.5 million worth of interest because in the next how many months it takes, I'm sure it will be even greater. But we believe we did it right the first time. Thank you very much. Good morning. May it please the court. The issue in this case is what is the proper tender and whether there was a proper tender. And that was the issue that Judge Grussell. Can I ask you before you get into that issue? Sure. I see, I believe it was in your brief, you raised an issue about jurisdiction. Sure. Would you address that please? Sure. This court has jurisdiction over the issue that was presented to Judge Grussell. And that issue was whether or not the insurance company made a proper tender of their policy. What this court doesn't have jurisdiction over is what the insurance carrier now asks you to make a decision on. And what they didn't ask Judge Grussell to make a determination on, and that is what are the rights and responsibilities of their policy with regard to their insured who is now in bankruptcy. That was not an issue that was raised before Judge Grussell. But now they raise that issue before you for the first time. I'm reading from your brief on page 16, and your concluding paragraph is that any actions taken in violation of an automatic stay are void. Is that still your position today? That's my position. That is my position. But that wasn't the issue that was before Judge Grussell. The issue that was before Judge Grussell, and this is from Occidental Fire and Casualties Emergency Motion to Stop the Approval of Post-Judgment Interest. This is in the record. This is what they filed in the court below on September 22, 2008. They asked to move this honorable court for an order finding that all post-judgment interest under 735 ILCS 5-2-1302, and I'm assuming that's a typographical error and that they're referring to 1303. On the prior judgment stopped as of the date that the sums set forth in paragraph 39A and B of this motion are below our pay. So they, in framing the issue before Judge Grussell, asked Judge Grussell to make a determination that they made a proper tender under 1303. We objected, and they then filed in their reply brief, that's part of the record, they filed this on December 1, 2008. According to plaintiff, the insurer's dispute is with defendants JMS Trucking Company of Illinois and San Bernardino over the meaning of the insurer's policy. They said, no, in fact, this is a dispute between the insurers and the plaintiffs over whether defense counsel made an effective tender on behalf of the defendants in Occidental. So if we look at what was done in the lower court, there was a request made by the insurance carrier to have the court bless their tender pursuant to 1303. Now what they've asked you to do is they've asked you to make a determination whether or not the insurance policy, whether their obligations and rights under the insurance policy with regard to the bankrupt insured, what those rights and responsibilities that they have. That's what's improper. No one is here to represent the interests of the bankrupt debtor. No one is here on behalf of JMS or San Bernardino to say, wait a minute, our rights and responsibilities under this policy are X. And so if the court wants to take the insured's argument here that you have to look at the policy, well, then we have a party in interest who's not here. And we have a party in interest who's not here and who's not here and has a stay. And so they can't pursue that. Now what they asked the court to do was to make a determination of their obligations to the plaintiff pursuant to 1303. And that's what the court did. Well, in the brief they did. That's what they asked the court to do. Now here they're asking you that it doesn't apply. And so, yes, if the court wants to make a determination of the rights and responsibilities under the policy, the court doesn't have jurisdiction. If the court wants to make a ruling, which I believe it does have jurisdiction and should make jurisdiction, did they follow, did they make a proper tender pursuant to 1303, then the court does have jurisdiction. We even rule on it, though, because you've got a bankruptcy pending that was never stayed for purposes of this. Right. So how could Russell have even ruled on it? Well, because what the insurance carrier was asking was asking for – I mean, there are ways to go into bankruptcy court and have stays temporarily lifted for purposes of doing all types of things in the trial court. But that wasn't done here for this particular issue. What they presented to the judge was, Judge, this is just an issue with regard to the accrual of interest. This is an ancillary matter to the judgment. And so, as such, we don't need the other party that's the bankrupt debtor. We don't need them because we're not prejudicing his rights. But isn't the interest of JMS and its insurance policy part of the bankruptcy estate? Their interest in their insurance policy? Well, it is in the respect that they have – there's a bad-faith claim that they have. And so their interest with regard to the obligations of the insurer under their policy certainly are – it's an asset of the estate. But it's an – I'm just talking about law. Go ahead. It's an asset of the estate, but it does not go to the bankruptcy person. In other words, it flows through, but it's a contractual asset they have that is a third-party beneficiary, so that the person in bankruptcy never feels the money. They have no control of the money. They've contracted with somebody to pay somebody else. So it wouldn't be an asset of the estate because the person in bankruptcy has no control over it. They never had any control over it. It's a contractual obligation to pay somebody else. Right? Right. But the only point is if we're going to interpret the insurance policy. If the insurer wants this court, they have to bring in JMS. They have to go lift this estate. Because what they're trying to do – And then your argument is, look, if we're going to interpret the insurance policy, then we can't. Because the insurance policy and the assets are all part of bankruptcy, and we don't have any jurisdiction. We need to go down to 219. Right. And that's not what they asked Judge Russell to do. Right. Because if they would have asked Judge Russell to do it, Judge Russell's response would have been, that's a chancery issue. If you want to bring a declaratory action, go ahead and do that. Can I ask you a question? I meant to ask Ms. Schwartz. I'll ask her the same thing. After the judge said no to you, saying you did not follow the statute and you did not offer to pay costs, why wouldn't the next day you just send another letter saying, you know, I'll pay the cost? And the only thing that would be even in dispute, then you wouldn't have stopped the interest from accruing as of the next day, okay? And the only thing you would be litigating is one day's worth of interest. They certainly could have done that. Can't they do that? They certainly could have done that. They asked us for an itemization of our costs. We provided that to them, and they never made an offer then to pay those costs. Well, because, I mean, I'm trying to figure out. I mean, she stands up. I'll ask Ms. Schwartz. You stand up in open court and say I owe you the cost. Oh, okay. And that was what the trial judge said. He didn't say you'd pay the cost. But now you're saying in open court you will. So I'm thinking to myself, why don't you go on the next day after you have the bad ruling, type another letter, put, by the way, in cost, send it over to the plaintiff, then you've stopped your interest, and the only thing you'd have in dispute here would be one day's worth of interest. Right? Nope, you're not missing it at all. And that's required. And just to go back to the issue with regard to a declaratory action and their obligation to do that, the cases that they've asked you to look at, the cases they've asked you to cite in your decision, the River Valley decision, all of those are declaratory actions. That's what they are. That's why we were looking at the terms of the policy because that was what was before the court. Here what they've asked Judge Grussell, back two years ago, they asked her, what is our responsibilities under 1303? And then when we said, hey, you don't have a party here that you should, they said, no, no, no, this is only about 1303. This is only about the judgment. Now they want to come to you and say, oh, no, don't look at 1303. Look at our policy. Well, if we look at 1303 and we look at the case law, it's very clear. This court has outlined what is their responsibility for a proper tender. And that's the question that we have. Did they make a proper tender? And without looking at the costs, just looking at the issue of interest, what is their responsibility to make a proper tender with regard to interest? Now they cite in their brief, in their lower court brief as well as this brief, the Ford Motor Company v. Manzo case. And Ford Motor Company v. Manzo says, you have to make an offer to pay the judgment. You have to also make an offer to pay the interest. You have to outline what that interest rate is, and you have to outline what the sum is. In that case, the insurer made the similar sort of letter that they sent. It said, say for insurance is willing to pay the judgment entered against a plus interest, please contract us to arrange payment. The court, now this is 1993, this first district said, in order to make a proper tender, you must include, one, a calculation of the interest due, and two, an offer to tender a specific amount which consisted of the judgment and interest as of a date certain. Now that wasn't done in this case. And the court back in 1993 said, that's not an appropriate tender. So even if you want to follow their rationale that they didn't have to pay costs, well, they didn't make an appropriate tender for the interest. But this is under the interest requirement. Under interest, you have to put a specific amount of what the interest is. You're saying that wasn't even specific enough under that. Even taking the language of the, well, looking at her contract, even you're saying that wasn't sufficient. It wasn't specific enough. Right. And so just looking at the interest portion of it, the court has told them, this is how you stop your requirements. This is how you tender. They didn't follow that. But then we have the Halloran case. And the Halloran v. Dickerson case is a 1997 case. Now that case, and specific to your question about, they said that they could never comply with 1303 because they don't have enough to satisfy the judgment. Well, Halloran was a $25,000 limit policy in which a $2.5 million judgment was entered. They then tried to tender their portion of the policy to stop a portion of the interest. And the court made specific guidelines. So to say that because they have less than the judgment that they can't comply with 1303, that's just not accurate. In Halloran, the court outlines specifically what they're required to do under it. And as they outline it, then they say, for the sake of clarity, we will now set forth the proper method for judgment debtors to stop the accrual of interest on a judgment. And they list a series of things that they're required to do. Determine the amount of reward awarded by the court or jury as damages and add to it plaintiff's court costs. Also add to the verdict the court costs and court costs any interest that accrues between the date of the verdict and the date of the judgment. This is the full amount of judgment upon which interest will accrue. So we have a definition from the appellate court of what is the judgment. And we have an outline of what they're required to do in order to stop the interest. And then they go into step two, step three, and step four and indicate partial claimants apply first to the interest owed. Only after the interest is paid in full will the judgment principle be reduced. So they're contemplating the instance where you don't have a full policy limits to pay the judgment. And then they actually give an example, which is... All of this was available and the insurer knew about it because they cited it in their lower court brief as well as the briefs to you. Now, I don't think an appropriate tender was made on the interest. I don't think an appropriate tender was made based on the conversation and the letter that they referenced to us. That was an offer or indicated a willingness to pay, but it was put with conditions. And those conditions were that was for full satisfaction of the judgment. And the reason why I say that is because I was the one with the conversation and I was the one who they specifically referenced our prior demand to resolve the case within the policy limits before trial. And so the case law is clear. You cannot make a conditional offer to resolve the case, which is what they did in this case. Now, we get to the issue of costs. They want to tell you, well, we're not required to pay costs. But the costs are put as part of their policy. Part of their policy indicates that they're responsible for costs. So if you want to look at their policy... Well, she submitted it. She submitted an open court that they had to pay the costs, right? That's what I heard. They are obligated to pay costs. The Niemeyer case is a First District case where it indicates that the language of 1303 is mandatory. That is not something that you can choose or pick that, you know, because our policy doesn't include costs that we don't have to follow it. It says that the tender must include all that the creditor has a right to recover, the debt, interest, and costs. And if the tender is less than that, then the tender is no good. So what we're left with is the insurance carrier now coming to the court and asking you to look at their policy when they didn't ask Judge Russell to do it, when they specifically told Judge Russell that their interest was, what is our obligations to the plaintiff under 1303? And so they can't now come before you and ask you to throw 1303 out and not look at it. I don't have anything further if there's any questions. Thank you, Counselor. Thank you. I'm amused by how many times the insurance carriers try to do this right in these cases. They do it one, two, three, four, five, six times, each time wrong, and then they're held responsible for the whole amount. What the court needs to understand is the procedure of what happened in this case. We got the case to defend the bad faith case. We were in front of Judge Larson. Counsel had the assignment from the Bankruptcy Court, so at that time they were JMS trucking the case. We were on the phone with them talking about working this out, and it came to us that they believed we had stopped interest. That was news to us because we thought we had. I said, well, can't we work this out? Can't we figure out how we do this? They said, you didn't do it right, so you need to get some kind of finding. So we went before Judge Larson against the plaintiff who was our estate and was our insurer, and we asked the court to let us know if we did this right, and she felt that she couldn't do that in that case. She said it has to be in the underlying case, so she transferred us to Maddox. They opposed the transfer. Then Maddox says you have jurisdiction because it doesn't affect the judgment. He said that. You can do this ancillary proceeding. We went back in front of the judge. Then they argued that the judge had no jurisdiction. I can tell you, because I drafted the motions when I started this journey, I don't think I even knew the difference between the two. We put 12303 in it. We put the supplemental payments provision in it. We threw the kitchen sink. We just said to the court, tell us how to do it. Do you want the interest? Do you want the cost? We put it in the bank. Tell me what to do. We specifically asked for an order that said that we satisfied our supplemental payments provision. That was in the order and in my motion. Now when I say to you, I don't think I have to comply with 12303, yes, I said that in my order because I didn't know at that point which way the court was going. What I'm saying now is we have not waived anything. This is a de novo review. Everything is before the court. It doesn't have to be an ancillary proceeding. Most of the proceedings in the other cases were garnishments. After judgments, we never got a garnishment. We did technically get it by the excess case, but the judge wouldn't hear it in that province. As far as the bankruptcy, let's remember what happened here. The court, there was a bankruptcy after the judgment. There was a stay for Mr. Feierweiser's appeal. The plaintiffs lifted the stay to get to the insurance benefits and in order to go and fight the appeal. There is no action being taken against the insured. There's already an $8.8 million verdict. I'm not putting any judgment onto the insured. It's already there. I'm trying to satisfy my piece of it. If it's no longer there because counsel has covenanted not to execute against it, it will be damages in my excess case just because I satisfied it under the supplemental payments provision as a contractual obligation and that's what we had asked counsel to agree to and when he shows you my order, it says we satisfy the supplemental payments provision but that this overdue interest is part of the excess case and counsel said no. What I'm suggesting to you is we're taking nothing against the insured, otherwise you wouldn't have been able to argue the appeal before me. There's already that judgment. We're satisfying what we owe to the plaintiffs and the judge heard all of this argument so it's a little bit disingenuous for them to say the judge said that's not what she was doing. She agreed that she had jurisdiction to hear it because she didn't believe there was any ruling against the insured. The insured didn't need to be part of this. We weren't asking for interpretation really vis-a-vis the insured except it's through the insured to get to the estate. Aren't you trying to relieve Occidental from any continuing obligation for the payment of the statutory post-judgment interest and to shift that responsibility to the bankruptcy estate of JMS? I'm not shifting. It's already there. The judgment's already there. The interest already runs. They are trying to get it through their judgment. They lifted the stay to get to it. The counsel's saying if we are going to use the insurance contract as the standard, which you're proposing that we do, they've got to be used because they're a party to that contract. No, not really, Your Honor, because it's the question. Actually, there are parties. Isn't JMS's interest in its insurance policy, isn't that part of the bankruptcy estate? Your Honor, we gave notice to JMS. We gave notice to the bankruptcy trustees. We gave notice to everybody of this motion. Everybody was told about it. Everybody came in on it, and the bankruptcy attorney didn't object. He came in and said it was fine that we were briefing it, to my knowledge. Counsel, technically... Don't you have an obligation to go into bankruptcy court with that stay? Absolutely not. The stay was already lifted. You have to look at the bankruptcy order. There's three things you can't do against an insured. You can't take a judgment against the insured. You can't take their property, and you can't levy a lien. We're not doing any of those three things because the court ruled we weren't taking... You're doing an act to obtain possession of property of the estate or of property from the estate... No. ...or to exercise control over property of the estate. No, we're not. You're not doing that? No. We're not going to get anything of the insured to pay the interest. It's our obligation. It's right. So the court already ruled on all of this. Go back and read my motion. I apologize, because in my original motion, I think I threw everything and more into it I didn't know what to do, and I still don't know what to do. And when you say to me, why don't I just send them costs? Because I'm conceding $2.5 million worth of interest. And I can't. I have to say that that first tender, I have to stick with it, or I owe all of this interest. And here's an interesting point. Let's certify that question. No, counsel won't agree to anything. Let's be... Couldn't you have said, you know, I'll go back and write another motion... No, counsel won't agree to it. ...and I'll certify that question, take the appeal from the court. Okay, read most of the decisions. In most of the decisions, the parties are very professional. They agree to stop interest, and we'll decide the issue later. This is acrimonious, okay? Every penny matters. There is no agreement to stop this interest now, then or ever, until we get a clear decision how to do it. You cannot use what counsel is arguing. Niemeyer, Niemeyer is 12303. Remember, no interest, no cost. The court said plaintiff doesn't have to tell you what's wrong with it. Haloran is a supplemental payments case in which they unfortunately talked about a tender. Remember, we took the word tender out. We don't want any confusion what that meant. We said offer to pay. You ask anybody on the street, what's an offer to pay? It's simple. What we did is we offered to pay. We didn't offer to settle. Counsel keeps telling us, we offered to settle. Where were the words offer to settle? Where was the word satisfaction? Where was the release document? Mr. Feierisel knew they weren't taking the money. He doesn't say they had that conversation. But counsel says they did the day before. He goes back to his office and types up a letter. On behalf of the insurance company, I'm tendering you the limits and the interest. He offered to pay to stop the insurance on the end. We have a continuing duty to defend. We're not done. We just want to stop the interest. Thank you very much. Thank you, counsel. The briefs are well written, and it was well argued and taken under advice. Thank you.  All right. Thank you.